UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


DEANNA JOHNSON,

      Plaintiff,


v.                                  Case No. 3:11cv506-MCR/EMT

FORT WALTON BEACH HOUSING
AUTHORITY; GAIL SANSBURY, in
her Official Capacity as Executive
Director of the Fort Walton Beach
Housing Authority; and
GAIL SANSBURY, in her Individual
Capacity,

      Defendants.

_____/

## ORDER

      Pending before the court is a motion for preliminary injunctive relief (doc. 7) filed by the plaintiff, Deanna Johnson, against Defendant Fort Walton Beach Housing Authority ("FWBHA"), seeking reinstatement of her family's Section 8 Housing Choice Voucher Program assistance ("Section 8 housing assistance") pending the determination of this action.[1]  The defendants oppose the requested injunction.[2]  An evidentiary hearing was held on December 19, 2011.  Johnson was present at the hearing along with her attorneys,

---

[1]  Through the Housing Choice Voucher Program, the Office of Housing and Urban Development ("HUD") "pays rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. § 982.1(a) (2011).  The regulations explain that the program is administered through state and local governmental entities called public housing agencies ("PHAs") with housing assistance funds provided by HUD to the PHAs.  The FWBHA is a PHA within the meaning of the regulations and administers the program benefits at issue in this case.

[2]  Defendants filed an untimely response (doc. 19) and an affidavit (doc. 20) in opposition to the motion, contradicting some of the plaintiff's factual assertions. The court has accepted the late-filed response.

Edward Grunewald and Lauren Moody.  Defendant Gail Sansbury, Executive Director of the Fort Walton Beach Housing Authority, was also present with attorney Jeffrey D. Toney, Sr.  The parties were given an opportunity to present evidence and oral arguments to the court.  Having fully considered the matter, the court now finds that the motion is due to be GRANTED.

**Background**

On October 20, 2011, Johnson filed suit against the FWBHA and its executive director based on their termination of her Section 8 housing assistance benefits.  In the complaint, Johnson asserted two counts under 42 U.S.C. § 1983 for the violation of her constitutional due process rights and her federal rights under the federal Housing Act, 42 U.S.C. § 1437-1437z-8; and one count alleging discrimination in rental housing based on her familial status, in violation of the Fair Housing Act, 42 U.S.C. § 3601-3631.  Johnson also filed the pending motion for a preliminary injunction, seeking the reinstatement of her Section 8 housing assistance benefits while this suit is being resolved.

At the evidentiary hearing on the motion for a preliminary injunction, the plaintiff testified that until September 2010, she and her family (her husband and three small children) had lived in Fort Walton Beach, Florida, and were recipients of Section 8 housing assistance administered through the FWBHA.  Johnson testified that she was wrongfully terminated from the program, and as a result, was unable to continue making rental payments and her family was forced to vacate their rental home.  Subsequently, they lived with a friend in Fort Walton Beach for a short time and ultimately moved to New York, where the plaintiff's mother resides.  Currently, they are living in a family-oriented homeless shelter in New York.  According to Johnson, at the end of this month they will be required to relocate to another shelter that will not be limited to families, and she fears her children will then be living in an open room shelter.

Johnson testified to the circumstances that resulted in the termination of her Section 8 benefits.  She explained that as a requirement of continued participation in the program, she and her family were required to attend an annual recertification meeting, but that small children were not permitted to attend.  In prior years, she and her husband had attended

recertification meetings together; they had always been found to be in compliance with the regulations and obtained recertification without incident until the events at issue in this suit. In July 2010, the plaintiff's family received notice that they were scheduled for a recertification meeting on August 4, 2010, but Johnson testified that on that day, she had been preoccupied because it was the first day of school for one of her children, and she forgot to attend the meeting. Shortly thereafter, she received notice that the meeting had been rescheduled for August 12, 2010. The notice detailed the documentation required to be brought to the meeting and indicated that this would be a group session, that "punctuality is essential or you will risk rescheduling at our discretion," and that the "appointment is for you and all persons 18 years or older in the household." (Doc. 8-6; Defendant's Hearing Exhibit 1).[3] Additionally, the notice informed participants that "[s]pace is limited, so please make arrangements for the care of your minor children for this appointment." (Id.) Johnson admitted that the second notice informed her that her benefits would be terminated if she failed to attend the rescheduled meeting.

On the day of the second scheduled recertification meeting, Johnson appeared punctually with all of the required paperwork, but her husband had stayed home with their then two-year old child because the notice informed them that small children could not attend, and they could not afford outside child care.[4] When she arrived, her case worker, Jessica Faircloth, told her that her husband must also attend the meeting. The plaintiff informed Faircloth that her husband was home because they had no other child care for the baby, but that she would go home and get him. (They lived approximately 10 minutes from the meeting site.) Faircloth said "ok" but told her to hurry because the meeting would start soon. When the plaintiff returned with her husband and small child approximately 20 minutes later, she was turned away because the meeting had "just begun." She was not allowed to give them the documentation she brought for the meeting. Mr. Keith Dickens,

---

[3] The parties agreed that this was an accurate sample of the form letter used to provide recipients notice of the recertification meeting, though this was not the actual letter plaintiff received.

[4] When they had attended prior meetings, the children were in daycare. Plaintiff testified that this time, she was in school and her husband was unemployed, so they had no money for daycare.

Deputy Executive Director of the FWBHA, was present and attempted to help them gain entrance, but they were ultimately told that they could not enter the meeting late and should leave; they were also told they would receive a termination letter in the mail.

The termination letter, dated August 12, 2010, stated Johnson was terminated from the program on grounds that she had missed two meetings and failed to provide required documents at the annual recertification meeting.  The letter also informed her of her right to an informal hearing, which the plaintiff promptly requested.  She received an informal hearing before Hearing Officer Theresa Griffith, at which Faircloth read the FWBHA's reasons for terminating plaintiff's benefits and the plaintiff explained the circumstances outlined above.  Johnson's husband and small daughter were also present (again, she could not afford child care), but Faircloth instructed them to wait in the lobby because children were not permitted to attend the informal hearing.  Johnson testified that Faircloth "stopped" her husband from going into the hearing room and that, although the hearing officer knew her husband was in the lobby, she neither allowed him in nor did she invite him to testify.  According to Johnson, no one at the informal hearing asked her to provide the paperwork that she had brought to the recertification meeting.  After plaintiff testified, the hearing officer informed her that the termination decision would be upheld and that she would receive a notice by mail.

Before receiving the hearing officer's letter decision, Dickens sent plaintiff a letter stating that her participation in the program was terminated due to her "failure to comply with the rules and regulations of the Section 8 program."  This letter, dated August 23, 2010, stated she could have the decision reviewed by the Board Chair.  Johnson timely requested that review.  The hearing officer's written decision, dated August 26, 2010, explained that the termination would be upheld because Johnson had failed to provide required documentation at the recertification meeting and had not shown a reasonable family emergency that would have prevented her from obtaining the information requested

by the case manager.[5]  This letter gave notice that Johnson could request an appeal to the Executive Director, Gail Sansbury.   Plaintiff had already appealed to the Board, as instructed in the letter from Dickens dated August 23, 2010.

After the Board met on October 5, 2010, Johnson was told that the Board had overturned the termination decision, that her rent would be paid, and that she would receive a letter scheduling her for a new recertification meeting.  Instead of receiving that letter, she was subsequently informed that the Board had reconsidered and reversed its decision; thus, she would not continue to receive assistance.  The Board minutes reflect that on October 5, 2010, the Board discussed the plaintiff's case and one other (*see* doc. 8-4).   There was some discussion that the policy regarding paperwork – requiring termination if paperwork is not submitted after two opportunities to attend an annual recertification meeting – was harsh but had been followed, and there was discussion regarding the child care requirement.[6]   The Board voted 4 to 1 to overturn the agency's decision to terminate Johnson from the program.   However, the Board's minutes from a meeting held on October 15, 2010, reflect that the Board reconsidered its decision in light of a letter from HUD, stating that there was no provision allowing the Board to make a program decision in an individual case that is arbitrary or contrary to the housing authority's adopted policy (*see* doc. 8-5).[7]   There is no indication in the record that the plaintiff

---

[5]  However, there was no evidence presented at the informal hearing from which a finding could have been made that Johnson failed to provide the required paperwork at the recertification meeting.  The only testimony before the hearing officer was Johnson's own testimony that she and her husband had been present for the recertification meeting with all required paperwork but that the FWBHA would not accept the paperwork and would not allow them to join the meeting because they were late and had a small child with them.

[6]  The October 5, 2010 minutes reflect that Gail Sansbury attended the meeting and explained that the FWBHA is subject to HUD deadlines that require recertification within a 13-month time frame; and therefore, the FWBHA policy starts the process two months early to have time for a second opportunity if the recipient misses the first meeting.  One Board member explained that he was concerned because the policy showed little leniency; another Board member expressed the view that a recipient should be permitted to return the same day with missing paperwork and still be permitted to recertify.  One member wanted to know why the plaintiff was being terminated for bringing a child to the meeting, and Marisel Armsted, Housing Director, explained that the group meetings last two to three hours and a small child cannot be left unattended in the lobby.

[7]  The October 15, 2010 minutes reflect the view that the Board has authority to change the policy but not to change individual decisions made consistent with existing policy.

received any formal or written notice from the Board regarding its initial decision, the fact that it was going to reconsider that decision, or its final decision reinstating the termination of assistance.

The FWBHA presented no live testimony at the hearing on the motion for a preliminary injunction.  With its response in opposition to the motion for a preliminary injunction, the FWBHA submitted the affidavit of one Jessica Harpe, stating in part that the plaintiff and her husband had both testified at the informal hearing.  That affidavit, however, does not identify Harpe's position with regard to the FWBHA or her basis of knowledge for the matters she testified to in the affidavit.  Additionally, where there are factual disputes and credibility determinations must be made to decide whether injunctive relief should issue, the court must hold an evidentiary hearing and cannot base a decision on conflicting affidavits.  *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998).  Thus, to the extent Harpe's affidavit includes assertions that contradict the plaintiff's testimony at the hearing, it will not be considered.

**Discussion**

To obtain a preliminary injunction, the moving party must demonstrate each of the following by a preponderance of the evidence:

(1)    that there is "'a substantial likelihood of success on the merits of the underlying case,'"

(2)    that the moving party "'will suffer irreparable harm in the absence of an injunction,'"

(3)    that the balance of harm to the moving party in the absence of an injunction would outweigh the harm to the opposing party from issuance of an injunction, and

(4)    that "'an injunction would not disserve the public interest.'"

*Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011) (quoting *N. Am. Med. Corp. v. Axiom Worldwide, Inc*, 522 F.3d 1211, 1217 (11th Cir. 2008)).  In this circuit, it is well settled that "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to all four

elements." *CBS Broadcasting, Inc. v. Echostar Communications Corp.*, 265 F.3d 1193,1200 (11th Cir. 2001) (internal marks omitted).

    1.    <u>Likelihood of Success</u>

    First, for reasons that follow, the court concludes that the plaintiff has demonstrated a substantial likelihood of success on the merits of Johnson's § 1983 claims.[8]  To prevail on a § 1983 procedural due process claim, the plaintiff must show (1) the deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) that the process afforded was constitutionally inadequate.  *See Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  Continued receipt of housing benefits is a property interest, and arbitrary termination of those benefits contrary to the public housing authority's administrative plan violates federal law.[9]  *See Wright v. City of Roanoke Redevlopm't and Hsg. Auth.*, 479 U.S. 418 (1987) (holding, "nothing in the Housing Act . . . evidences that Congress intended to preclude petitioner's § 1983 claim" under Section 8); *Goldberg v. Kelly*, 397 U.S. 254, 269-70 (1970) (discussing welfare benefits as property rights); *see also Basco v. Machin*, 514 F.3d 1177, 1182 n.7 (11th Cir. 2008) (stating that the principle articulated in *Goldberg* applies with equal force in the context of a procedural due process claim based on Section 8 benefits, "where eligible participants rely on subsidies to meet their basic need for housing"); *see also* 24 C.F.R. § 982.54(c) (requiring the public housing authority to administer the program in accordance with its administrative plan). Additionally, there is no dispute that the FWBHA was engaging in state action in exercising its duties.  Thus, the court need only decide whether there is a substantial likelihood of success on the plaintiff's assertion that she did not receive constitutionally adequate process and/or that the defendant's actions violated the United States Housing Act of 1937, as amended.

---

    [8]  Having found a likelihood of success on Counts 1 and 2, the court finds it unnecessary at this time to express any view on the likelihood of success regarding Count 3.

    [9]  *See Sanders v. Sellers-Earnest*, 768 F. Supp.2d 1180, 1183 n.1 (M.D. Fla. 2010) (noting, "[t]he Eleventh Circuit has suggested but not expressly held that, independently of the requirements of constitutional due process, the procedural rights set forth in 24 C.F.R. § 982.555 are enforceable under 42 U.S.C. § 1983," citing *Basco*, 514 F.3d at 1180, 1181-82).

Under the applicable federal regulations, a Section 8 assistance participant is obligated to supply required information, including information necessary to the proper administration of the program and any information requested for use in a regularly scheduled reexamination of family income and composition in accordance with HUD regulations.  *See* 24 C.F.R. § 982.551(b)(1), (2).  A participant is entitled to an informal hearing when the public housing agency makes a determination to terminate the family's participation in the program due to the family's action or failure to act.  *See* 24 C.F.R. § 982.555(a)(v).  At an informal hearing, the recipient has the rights, among others, to present evidence and question witnesses.  *See* 24 C.F.R. § 982.555(e)(5).  While the regulation does not expressly address which party bears the burden of persuasion at an informal hearing, the Eleventh Circuit has indicated that the burden lies with the housing authority:  the housing authority must first present sufficient evidence to establish a *prima facie* case that termination was justified and then the Section 8 participant goes forward with evidence, but the housing authority bears the ultimate burden of persuasion at the informal hearing.  *See Basco*, 514 F.3d at 1183-84.  The hearing officer then "must issue a written decision, stating briefly the reasons for the decision."  24 C.F.R. § 982.555(e)(6).

The right to be heard before being deprived of a property right requires a meaningful opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Id.* (internal marks omitted); *see also Goldberg*, 397 U.S. at 267.  This includes timely and adequate notice of reasons, and effective opportunity to defend by confronting witnesses and presenting evidence orally.  *Goldberg*, 397 U.S. at 267-68 (internal marks omitted).  The Supreme Court also stated in *Goldberg* that "[t]he opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."  *Id.* at 269 (explaining it was insufficient to expect a welfare recipient to present written evidence).

The court concludes that there is a substantial likelihood of success on the plaintiff's claims that she did not receive constitutionally meaningful process, that she was arbitrarily terminated from the program, and that FWBHA's policy violates federal law.  The evidence

before the court at this preliminary stage is that the plaintiff was initially precluded from participating in the recertification meeting on arbitrary grounds that were not tailored to her needs and circumstances and not required by either HUD regulations or FWBHA's administrative plan.  Children were not allowed to attend the recertification meeting and Johnson had no money for childcare, so she left her husband home with the child.  When she arrived punctually and with her paperwork, Faircloth advised that her husband's presence was also required, and she should hurry to get him.  Johnson, who lived only approximately 10 minutes from the site, went home for him immediately.  According to the plaintiff's undisputed testimony, they returned promptly and the meeting, which was scheduled to last two to three hours, had only just begun – yet they were turned away again.  No provision whatsoever was made for them to participate in the meeting that day; they were not allowed to present the required paperwork, which they had with them at that time; and they were instructed to leave although the group meeting they were scheduled to attend had only recently begun.

At the informal hearing, FWBHA relied on the plaintiff's testimony to establish that she missed the first scheduled meeting and was late to the second meeting but offered no testimony contradicting the plaintiff's testimony that she was present with all required paperwork and willing to participate at the second meeting.  FWBHA offered no evidence to explain or justify its rigid enforcement of the punctuality and child restriction policies, which completely precluded the plaintiff's participation in the second scheduled recertification meeting.[10]  Before this court, FWBHA has likewise offered no evidence that either its administrative plan or HUD rules or regulations required the exclusion of children or latecomers to the meeting.

The plaintiff also demonstrated a likelihood of success on her claim that she was deprived of a meaningful opportunity to present witnesses and testimony in her favor before the hearing officer at the informal hearing.  *See* 24 C.F.R. 982.555(e)(5) (stating

---

[10]  The Board's minutes reveal that some members thought the policies were too harsh when strictly enforced without consideration of special circumstances or an opportunity to present the required materials later the same day.

that the PHA and the family "must" be given the opportunity to present evidence and question any witnesses).  Johnson's husband was present but, again, he was precluded from attending or testifying due to the presence of their small child.  According to Johnson, Faircloth stopped her husband from entering the hearing room and the hearing officer knew he was present but gave no opportunity for him to testify.

Johnson asserts that the hearing officer's decision was inadequate and improperly shifted the burden of persuasion to her at the informal hearing.  FWBHA's written grievance procedure, attached to the complaint, states that "[a]t the hearing, the Complainant must first make a showing of an entitlement to the relief sought and thereafter the FWBHA must sustain the burden of justifying FWBHA's action or failure to act" (doc. 1-1, at 4).  The Eleventh Circuit has indicated that the housing authority bears the burden of persuasion at the informal hearing to determine whether a recipient's benefits should be terminated.  *See Basco*, 514 F.3d at 1183-84 (concluding that the PHA had not met its burden to show that a claimant had violated HUD rules prohibiting the housing of unauthorized visitors by presenting only unauthenticated copies of police reports).  The court also stated in *Basco* that the PHA "must initially present sufficient evidence to establish a prima facie case" of a violation, and thereafter, the burden of production is on the claimant,[11] although the ultimate burden of persuasion rests with the PHA.  *Id.* at 1182.  FWBHA's written grievance procedure is inconsistent with the procedure set forth in *Basco* because it requires the Section 8 participant to make an initial showing of entitlement to relief rather than requiring the housing authority to first present evidence of a *prima facie* case showing a violation.  FWBHA argues that the facts of this case demonstrate that, regardless of the written policy, it did not impermissibly shift the initial burden to Johnson, citing *Lane v. FWBHA*, No. 3:11cv374, 2011 WL 5826040 (N.D. Fla. 2011).  There, the court found it unnecessary to address this same argument because the facts of that case (that is, that Faircloth testified at the informal hearing) did indeed demonstrate that FWBHA carried the initial burden of production.  *See id.* at *3 (stating that the plaintiffs admitted that

---

[11] The PHA conceded at oral argument in *Basco* that it bears the initial burden to present a *prima facie* case.  *See* 514 F.3d at 1182.

Faircloth testified to the hearing officer about relevant documentation that she had obtained).  The record here contains no evidence that FWBHA presented any initial testimony or evidence before the hearing officer.

Furthermore, the record here indicates that not only was the plaintiff required to make the initial showing, but she was also required to bear the ultimate burden of persuasion.  The FWBHA did nothing more than read its termination notice into the record. Then, Johnson testified that she had been present at the recertification meeting with all required paperwork, though she had arrived late due to circumstances which she also explained.  The FWBHA put forth no evidence to contradict the plaintiff's testimony, no evidence to substantiate its assertion that she failed to provide the required paperwork, and no evidence to demonstrate that she had violated HUD rules or regulations that would justify terminating her from the program.  FWBHA argues before this court that it relied on Johnson's own testimony that she had missed one meeting and its termination notice. Rather than requiring the FWBHA to present evidence to satisfy its burden of persuasion, the hearing officer concluded in her written decision that the plaintiff had failed to identify a "family emergency" to justify not providing the required documentation.  But, as noted, the plaintiff's uncontradicted testimony before the hearing officer as well as before this court was that she had been present with all required documentation at the recertification meeting and the FWBHA had refused to accept it.  The hearing officer made no finding that this explanation was not credible, cited no evidence by which the FWBHA can be said to have satisfied its burden of persuasion, and instead placed that burden on the plaintiff.

In addition to these procedural deficiencies, the court notes that there were mixed instructions given to the plaintiff regarding her right to appeal the hearing officer's decision. Furthermore, there is no evidence that the plaintiff received any notice of the Board's intent to reconsider its decision to reverse the termination decision, and she received no opportunity to participate in the reconsideration.  Thus, on this preliminary record, it is likely that a due process violation occurred and that the Housing Act was violated by FWBHA's arbitrary termination of Johnson's benefits.

The defendant argues that the plaintiff has no likelihood of success on the merits

because she has not demonstrated that a FWBHA policy or custom deprived her of a meaningful opportunity to be heard.  A municipal entity is not liable under § 1983 for damages or injunctive relief unless injury has been inflicted by the entity's own policy or custom.  *See Los Angeles County, Cal. v. Humphries*, 131 S. Ct. 447, 452-54 (2010); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The court finds that the plaintiff has sufficiently demonstrated that the exclusion of her husband from the recertification meeting and the informal hearing was based on the FWBHA's policies or customs regarding punctuality and the exclusion of small children.  The record at this stage shows that the hearing officer and FWBHA employees strictly enforced these policies to the plaintiff's detriment, with knowledge that she and her husband were present and willing to participate and to provide required documentation.  The notice scheduling the annual recertification meeting, which plaintiff received, clearly set forth the FWBHA's policy or custom of viewing punctuality and also the child care requirement as essential; and they were strictly enforced in this case.  The Board minutes reveal that some Board members thought the policies should be revisited, and the Board reversed its initial decision on grounds that it had no authority to overturn the termination decision because its policies were in fact enforced.  Also, FWBHA's written grievance procedure places the initial burden on the claimant.  Thus, at this preliminary stage, the record sufficiently shows that it is likely that the FWBHA deprived the plaintiff of meaningful procedural due process through the rigid and arbitrary enforcement of its policies or customs and/or its grievance procedure.

  2. <u>Irreparable Harm</u>

  Ultimately, the plaintiff and her family were rendered homeless by the defendant's decision to terminate their Section 8 housing assistance benefits.  The court concludes that the loss of benefits and resulting loss of housing satisfies the irreparable harm element. *Cf. Rosenfeld v. Hackett*, 2008 WL 2564914, at *2 (D. Or. 2008) (denying injunctive relief where the plaintiff did not seek immediate review of the decision to terminate Section 8 assistance and waited over three years to file suit and move for emergency injunctive relief).  Here, the plaintiff sought immediate review of the termination decision and the hearing officer's decision, despite receiving two different instructions regarding appeal

procedures, and she was not provided an opportunity to be heard on reconsideration. Following the Board's conflicting decisions which ultimately affirmed the hearing officer's decision, she was forced to vacate her rental home and live with a friend for three months before resorting to a homeless shelter and leaving the state.  Johnson also testified that her family soon will be forced to move to another shelter, which is not restricted to families. The court finds that the plaintiff has shown irreparable harm, and FWBHA has not suggested otherwise.[12]

### 3.   Balance of Hardships

The balance of hardships requires the court to weigh the family's homelessness against the harm to the public entity that would result from the requested injunction.  The family previously was qualified for Section 8 benefits and the benefits were terminated only because she missed the recertification meeting, which the FWBHA's policies precluded her from attending, not as the result of any substantive violation of HUD program rules.  The record at this stage is clear that Johnson had a small child, was unable to pay for outside child care while she attended the meeting, but otherwise, she appeared with all necessary paperwork.  The defendant has presented no evidence indicating that she did not continue to meet the substantive program requirements at the time of her recertification meeting; nor has it presented any evidence that the plaintiff is currently able to afford housing at market rates without assistance. *See Stanley v. Baltimore Cnty. MD*, No. 06-944, 2006 WL 1238559, at *3 (D.Md. 2006) (finding that the balance of harms weighed in favor of the plaintiff and required continued benefits in circumstances where the defendant produced no evidence that the plaintiff possessed sufficient income to pay market rate and remain in her current housing unit without housing assistance).  FWBHA asserts that it would have "administrative hurdles to go through" to reinstate the plaintiff's family in the program and that it would result in a "significant" expenditure of costs and time.  However, the FWBHA offered no evidence at the hearing or even any detailed written or oral argument describing

---

[12]   The Eleventh Circuit has found "that irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes."  *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984).

the administrative difficulties or costs involved in that process to substantiate its claim of harm. FWBHA's mere suggestion that it will face administrative hurdles in reinstating benefits, which likely should not have been terminated in the first instance, does not outweigh this family's plight. On this record, the harm of homelessness outweighs the FWBHA's concerns regarding administrative costs. *See id.* (recognizing the importance of maintaining the public housing office's ability to enforce HUD regulations, but finding that this concern did not outweigh the potential harm of immediate homelessness to the plaintiff from the denial of the injunction).

      4.   <u>Public Interest</u>

      Section 8 housing assistance was designed for the purpose of "aiding low-income families in obtaining a decent place to live." 42 U.S.C. § 1437(f)(a). Rendering a family homeless because they could not afford child care while they attended the recertification meeting or informal hearing or because they were minutes late for a recertification meeting is contrary to that policy. The defendants even concede that, "as opposed to a homeless shelter, the public interest would likely favor Plaintiff receiving the Section 8 assistance" (doc. 19, at 29). The public interest is also served by ensuring that participants are afforded housing benefits to which they were entitled and are "afforded full [and meaningful] procedural due process before their participation in the program is involuntarily terminated," which protects rights to housing assistance as well as "society's concern for close scrutiny of adverse determinations." *Stanley*, 2006 WL 1238559, at *3. The public interest weighs in favor of the plaintiff.

      Considering all these factors, the court concludes that preliminary injunctive relief of reinstatement of the plaintiff's Section 8 benefits and eligibility until a final judgment is rendered in this suit is appropriate.[13] Also, the court concludes that, because the plaintiff is indigent and has been permitted to proceed *in forma pauperis* in this suit, it is appropriate to waive the security requirement of Fed. R. Civ. P. 65(c). *See BellSouth*

---

    [13]  The plaintiff also sought retroactive payment of housing assistance benefits since the date her benefits were wrongfully terminated, but the court finds this request to be more appropriately resolved as a claim for damages with the merits of the case because she is no longer living in the same rental unit.

*Tele., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (noting that the district court has discretion to set the amount of security required by the rule, and "may elect to require no security at all") (internal marks omitted); *see also Sanders v. Sellers-Earnest*, 768 F. Supp.2d 1180, 1188 (M.D. Fla. 2010) (exercising the court's discretion to waive the requirement of a bond or other security where plaintiff was a Section 8 housing assistance recipient).  Defendant does not argue that the plaintiff should be required to give security.

Accordingly, it is hereby ORDERED:

1.      For reasons stated above, the plaintiff's Motion for a Preliminary Injunction (doc. 7) is GRANTED as follows:  Defendant Fort Walton Beach Housing Authority shall immediately reinstate the plaintiff's Section 8 assistance and participation in the Section 8 Housing Choice Voucher Program and shall maintain her Section 8 housing assistance benefits and eligibility until the plaintiff's complaint is fully adjudicated.  Plaintiff is not required to post bond.

2.      Additionally, this order memorializes the court's ruling that the defendant's Second Motion for Extension of Time to File a Response (doc. 25) is GRANTED.

**DONE AND ORDERED on this 5th day of January, 2012.**

*s/ M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**